TROY W. ENGLISH *v.* MITTIE C. ENGLISH

5-6192                                   491 S.W. 2d 60

Opinion delivered March 5, 1973

*N. D. Edwards,* for appellant.

*Wiggins & Christian* and *Ralph W. Robinson,* for appellee.

LYLE BROWN, Justice. This suit was instituted by Mittie C. English against her son, Troy W. English to set aside two deeds. Title to the property was originally in Henry English and Mittie C. English as husband and wife. Henry English died in 1950. In 1971 Mittie C. English was persuaded to place title in herself and her son as joint tenants with the right of survivorship. It is the latter conveyances which the suit sought successfully to set aside. Mittie C. English died before the trial ended and suit was revived with her other children being substituted as plaintiffs. Notwithstanding, the appeal was lodged showing Mittie C. English as appellee. Be that as it may, the rights herein which would have inured to the benefit of Mittie English shall vest in the named survivors.

Mittie C. English was 84 years old at the time of her death. For a number of years she had lived alone on the farm property in question. In 1961, Troy English, who had lived in California much of his adult life, arrived at the homeplace to live with his mother. During the ensuing months some type of conveyance was drafted concerning the property; however, the living arrangements proved unsatisfactory. Thereupon Troy destroyed the conveyance and returned to California in 1963. In 1969 Troy made his second appearance at the homeplace, ostensibly to make his home with his mother. The deeds creating the joint tenancy were executed on May 28, 1969. In May 1971 Mittie English brought her action to cancel the conveyances, alleging fraud and undue influence. The chancellor found that it had been established by clear and convincing evidence that the son had overreached the mother; that there was no consideration for the execution of the conveyances; and that the son was physically unable to care for his mother, as he had promised to do in return for her executing the conveyances.

It was appellee's testimony that she was in poor health when Troy came to her home on March 1, 1969, and said he had come to live with her. At that time the

home consisted of one large room, a kitchen and a bath. Troy said he was going to take care of her, add a room to the house and repair the house; that he would fix the fences, clear land and repair the road. Then she said he began talking about a deed and it was discussed off and on for some two months. She related that her son did not live up to any of his promises. Then on May 28, 1969, her son brought a notary public to the house. A portion of Mrs. English's abstracted testimony gives her description of that meeting:

> They read it to me but I was real sick and I can't remember anything he read and I couldn't read or see or understand what it was. All I remember was at the last, was all of one-half of the oil rights, that's all we get. I just didn't realize, I don't know whether I was doped or what, but I told him I didn't want to for it was against what I promised dad that I would not sell it or let just one have it. I didn't really know I was deeding it to him. I didn't really know it was a deed. The real estate man read it to me. When they came I got up out of my chair, and I met them. I couldn't know who they was for I can't see. He says "Mother, I've got some papers for you to sign". By some means, I don't know why, I signed them and I didn't know they was deeds.

One of the children testified on behalf of the mother. The daughter lives in Van Buren, which is not far from Ozark, and after her mother fell in March 1969, the daughter has averaged coming to the farm twice a week. The daughter, Henryetta Freeman, said she did cooking, washing and house cleaning for her mother. Henryetta corroborated her mother's testimony to the effect that Troy was not at the place nearly all the time; in fact it was testified that he went to Springdale and worked in the chicken industry for several weeks.

To the contrary, Troy English described himself as being attentive to his mother. He said he made no promises in consideration of the creation of the joint estate in the homeplace. He quoted his mother as saying that all the other children had their own homes and families and could not afford to stay with her. It was his mother's

idea, so he testified, that the title be changed. He said his mother was solicitous about his staying with her. He said the execution of the deed was a calm and deliberate act and in that connection he was corroborated by the notary public. On cross-examination it was elicited that Troy did not advise his bothers and sisters that the mother was making a deed. Also, Troy testified that he expressed to his mother his intention of doing all that he was physically able to do about the place; and that he was afflicted with Parkinson's disease which had progressed since 1945.

Cases of this type must stand or fall on the basis of the peculiar facts and circumstances applicable thereto. It would therefore serve as no real precedent for all the evidence to be detailed, especially since we are affirming the chancellor. The chancellor specifically found (1) that the evidence of overreaching was clear, cogent and convincing; (2) that there was a total failure of consideration; and (3) that appellant did not perform those chores which appellee had been led to believe would be carried out by him. In other words the chancellor attached greater credibility to the evidence offered by appellee and we certainly cannot say it was error.

Affirmed.